UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WISCONSIN

---

RAMONA MARY KIRKLAND,

        Debtor.

--------------------------------------------

PAUL G. SWANSON,
Chapter 7 Trustee,

        Plaintiff-Appellee,

        v.                               Case No. 05-C-0481
                                                   (Adversary No. 03-2495)

DR. ROY OSTENSON,
d/b/a Appleton Chiropractic,

        Defendant-Appellant.

---

## DECISION AND ORDER DISMISSING APPEAL

Dr. Roy Ostenson appeals from the February 3, 2006, Order Denying Relief from Judgment of Bankruptcy Judge Margaret Dee McGarity. The decision declined Ostenson's request that the Bankruptcy Court vacate the judgment against him in Adversary Proceeding 03-2495, found that Ostenson had received a preferential transfer, and ordered that he pay the Bankruptcy Trustee, Paul G. Swanson, $4,518.75. (R. 1; Bankr. R. 20.[1])

---

[1]The abbreviation "R." refers to the record transmitted to this court from the bankruptcy court clerk and docketed in this court as docket number 1. That record contains five items, including the notice of appeal (R. 1); Ostenson's designation of the record for appeal (R. 2), which includes the bankruptcy court minutes from January 18, 2005, and letter briefs of the parties filed in July and August 2004; a statement of issues on appeal (R. 3); and the docket sheets from the adversary (R. 4) and Chapter 7 bankruptcy (R. 5) proceedings. To decipher the procedural history of this case, this court also called for and reviewed the full file from the bankruptcy court clerk for adversary case 03-2495. The abbreviation "Bankr. R." refers to the documents contained in the bankruptcy record itself, i.e. the documents listed in R. 4.

Ostenson, a chiropractor, provided treatment to Ramona Kirkland from June 13, 2001, to June 25, 2002, following Kirkland's injury in an automobile accident on May 29, 2001. (R. 2 item 1 at 1, item 2 at 3.) Before receiving treatment, Kirkland signed a document titled "Voluntary Irrevocable Physician's Lien," in which she purported to give an irrevocable lien in Ostenson's favor against any settlement or award she might receive relating to the accident. In the document, she directed her attorney to honor the lien and to pay Ostenson directly from any proceeds placed in the attorney's trust account. Later Kirkland received a settlement, and her attorney paid Ostenson $4,368.75 on March 18, 2003. (R. 2 item 2 at 3.) On May 15, 2003, Kirkland filed a Chapter 7 bankruptcy petition. (R. 5 entry 1.)

The Chapter 7 Bankruptcy Trustee, Paul G. Swanson, filed an adversary complaint on September 25, 2003, to recover the payment to Ostenson as a preferential transfer made within ninety days of the filing of the Chapter 7 case, under 11 U.S.C. § 547(b). (*See* R. 4 entry 1.) Ostenson was served on October 13, 2003, with the summons and adversary complaint requiring him to answer by November 9, 2003 (Bankr. R. 2), but he failed to do so or to file any motion. In minutes of a telephonic hearing held on December 18, 2003, the court noted Ostenson's failure to answer and the possibility of default judgment. As of January 23, 2004, Ostenson had still not answered, and Judge McGarity granted default judgment against him.[2] (*See* Bankr. R. 5.) Judgment issued on

---

[2] Although the minutes from the hearing held December 18, 2003, state that Judge McGarity expected a motion for default judgment and opportunity for defendant to object before default judgment was entered, Swanson never filed such a motion. Instead, he filed an affidavit of default (not default judgment) and Judge McGarity thereafter entered judgment. Notwithstanding the court's reference to a motion and notice, no notice of default judgment had to be provided to Ostenson. Pursuant to both Fed. R. Civ. P. 5(a) and 55(b)(2), no notice is required for someone who has not appeared in an action.

2

January 26, 2004, and was entered the same day, ordering Ostenson to pay Swanson the amount of the preference payment plus costs, for a total of $4,518.75. (Bankr. R. 6; R. 4 entries 6, 7.) The bankruptcy court clerk's office mailed a Notice of Entry of Judgment to Ostenson on January 26, 2004. (Bankr. R. 7.)

On February 24, 2004, Ostenson, representing himself, filed a letter with the bankruptcy court, asking it to reverse the judgment because he had never been called by the court on December 18, 2003, at the time specified for the pretrial conference. (Bankr. R. 8.) Ostenson wrote:

> As per the Judgment filed against me, I would like to submit this letter and have the Court reverse this decision based on the information I had received and the fact that I was never contacted by the Court, nor have I ever had my phone calls returned from the attorney on record with Ramona Kirkland. On the date and time specified in the Summons, I was in my office awaiting the stipulated Court-initiated call, and in fact, waited over two hours in the event there had been a delay in the Court hearing. I never did receive a call on that date, or any other date, nor were there any messages on my answering machine in my office regarding this matter.

(*Id.*) Ostenson then described his defense based on the Voluntary Irrevocable Physician's Lien. (*Id.*)

On May 4, 2004, Bankruptcy Judge McGarity held a hearing regarding the letter. The minutes first indicate the judge construed the letter as a motion for relief from judgment. (Bankr. R. 10.) The minutes then note she construed the letter as an answer to the complaint. (*Id.*) Later, the judge ordered simultaneous briefs by the parties. (Bankr. R. 15.)

In his brief, Ostenson argued that the payment was made in the ordinary course of business and was permitted under 11 U.S.C. § 547(c)(2). (R. 2 item 2.)

3

Swanson, on the other hand, argued that the Voluntary Irrevocable Physician's Lien did not create a lien recognized under Wisconsin law. (R. 2 item 3.)

At a hearing held January 18, 2005, Judge McGarity decided in favor of Swanson. (R. 2 item 1.) The minutes reflect her reasoning that the Voluntary Irrevocable Physician's Lien did not create a lien in favor of Ostenson. (*Id.*) However, the judge did not mention Ostenson's § 547(c) argument, nor address Ostenson's reasons for not answering the complaint or appearing in the case prior to the entry of default judgment.

The court's minutes include the following language: "Thus, the established law supports the plaintiff's position. The transfer meets all the requirements of 11 U.S.C. § 547(b). Summary judgment is granted in favor of the trustee." (R. 2 item 1 at 2.) On February 3, 2005, the clerk entered the "Order Denying Relief from Judgment," which found the debtor's transfer to Ostenson to be a preference, ordered the transfer voided, and again ordered Ostenson to pay $4,518.75 to the trustee. (Bankr. R. 20.)

Notably, Ostenson did not appeal the January 26, 2004, judgment. Instead, he appeals the February 3, 2005, order. (R. 1.)

On appeal, both parties fail to address the exact posture of the case and the proper standard of review. Ostenson plows right into the substantive issues of whether the Voluntary Irrevocable Physician's Lien created a lien under 11 U.S.C. § 547(c)(3) and whether Kirkland's payment to Ostenson was made in the ordinary course of business under § 547(c)(2). (Br. of Def.-Appellant at 2, 4.) Swanson, on the other hand, provides an incorrect standard of review. He discusses the standard for this court's review of a grant of summary judgment. (Br. of Pl.-Appellant at 2.) However, no summary judgment motion was filed in the case.

4

Before addressing the merits of Ostenson's defenses to the trustee's suit, this court first must clear up the procedural status and standard of review on appeal. The record contains several contradictions regarding what exactly Judge McGarity decided and the consequence of the February 3, 2005, order. Clarification is crucial for proper resolution of the appeal.

Certain items in the record suggest that perhaps Judge McGarity allowed Ostenson to file his answer late and then proceeded on the merits. First, the judge construed Ostenson's letter filed February 24, 2004, as a motion for relief from judgment, but the minutes from a May 4, 2004, hearing, at which Ostenson appeared pro se, indicate she also considered the letter to be an answer. Thereafter, Ostenson hired an attorney, and counsel filed another answer on June 17, 2004, "clarif[ying] the Answer previously filed by letter." (Bankr. R. 13 at 1.) Further, the briefs filed in the bankruptcy court discussed only the merits of Ostenson's defenses; the reasons he gave for failing to appear or to file an answer timely were not addressed.

Judge McGarity's decision of January 18, 2005, discussed only the merits of one of Ostenson's defenses, not the reasons for Ostenson's tardiness; also, she mentioned "summary judgment." And finally, the Order Denying Relief from Judgment does not actually order that a motion for relief from judgment be denied. Instead, it reiterates the content of the judgment.

Other items in the record suggest that Ostenson's letter retained its character as a motion for relief from judgment rather than an answer. The judgment against Ostenson was never vacated. It remains the only judgment in the adversary case docket. Nothing in the minutes or any order indicates that a motion for relief from judgment was

5

granted or that the judgment was to be vacated. Notwithstanding Judge McGarity's mention of summary judgment, no motion for summary judgment was filed such that this court should find the adversary proceeding was reopened.

Next, notwithstanding two references to treating Ostenson's letter as an answer to a complaint and the filing of a second answer, there is no conclusive proof that Judge McGarity accepted Ostenson's submissions as valid answers irrespective of their tardiness or granted Ostenson an extension of time for their filing. Further, after the court mentioned construing the letter as an answer, the letter was again treated as a motion for relief from judgment, most noticeably in the title to the order from which Ostenson appeals and, where Judge McGarity noted her "consideration of defendant's motion for relief from judgment." (Bankr. R. 20.) Finally, throughout the docket, the letter Ostenson filed on February 24, 2004, is referred to as a motion for relief from judgment. (*See* R. 4 entries 18-20.) If the docket inaccurately reflected the status of the case and its procedural history, the parties and court should have had it corrected.

In this court's view, the most important facts are that Judge McGarity never vacated the judgment of January 26, 2004; the order from which Ostenson appeals is titled as an order denying relief from judgment; and the docket reflects the letter's status as a motion for relief from judgment. No transcripts are in the record. Therefore, based on the documents in the appellate record and the bankruptcy court dockets, this court must conclude that the adversary proceeding was not "reopened" and that Ostenson appeals from the denial of a post-judgment motion. Ostenson's own brief confirms this interpretation. His statement of the case, acknowledges that a default judgment was entered, that Judge McGarity interpreted Ostenson's pro se letter as a motion for relief

6

from judgment, and that she entered an order denying relief from judgment. (Br. of Def.-Appellant at 2.)

If the parties and court were operating with the belief that the adversary judgment had been vacated, the documents in the record fail to reflect that understanding. Instead, there is a judgment, a motion for relief from judgment, and a decision denying that motion. The confusion regarding the construction of Ostenson's letter and the procedural status of the adversary case highlights the need for parties to adhere to procedural rules and to monitor their cases and dockets diligently to insure that procedural history is clear.

Thus, even though Judge McGarity addressed the merits of Ostenson's claim in the minutes of the January 18, 2005, hearing, Ostenson does not appeal an order on the merits regarding preferential transfers. The judgment against him stems from his default judgment, not from a decision on the merits. Further, Ostenson is not appealing the entry of default judgment. Instead, he is appealing the order that denies his letter request to vacate the default judgment.

Ostenson's February 24, 2004, letter request was filed more than ten days after judgment was entered against him, meaning that his request fell under Fed. R. Civ. P. 60(b). Fed. R. Bankr. P. 7055, 9023, 9024; Fed. R. Civ. P. 55(c), 59(e), 60(b); *see Bell v. Eastman Kodak Co.*, 214 F.3d 798, 800 (7th Cir. 2000). Therefore, Ostenson is appealing the denial of a Rule 60(b) motion.

Rule 60(b) enables a court to grant relief from a judgment only under the particular circumstances listed in the rule. *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). Those are:

7

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment.

Fed. R. Civ. P. 60(b). "The rule was designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law." *Russell*, 51 F.3d at 749. It is not a vehicle for addressing simple legal error. *Id.*

Although Ostenson never cited what subpart of Rule 60(b) supported his motion to vacate the judgment, it appears that subpart (b)(1) is the best fit: mistake, inadvertence, surprise or excusable neglect. Subparts (b)(1) and (b)(6) are mutually exclusive; therefore, because (b)(1) applies, relief under (b)(6) is not available. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 393 (1993). Furthermore, to justify relief under (b)(6), a party must establish extraordinary circumstances suggesting that he is faultless for any delays. *Id.*

Denial of relief under Rule 60(b) is reviewed for abuse of discretion. *Bell*, 214 F.3d at 800; *Childress v. Aurora Nat'l Bank (In re Childress)*, 851 F.2d 926, 928 (7th Cir. 1988). A bankruptcy court judge has discretion to grant relief from judgment under Rule 60(b), but should indulge a presumption against reopening. *See In re McDonald*, 118 F.3d 568, 569 (7th Cir. 1997). A denial of a Rule 60(b)(1) motion should stand unless no reasonable person could act as the judge did. *See Fed. Election Comm'n v. Al Salvi for Senate Comm.*, 205 F.3d 1015, 1020 (7th Cir. 2000).

8

The Rule 60(b)(1) inquiry focuses on the conduct giving rise to the dismissal rather than the dismissal itself. *Id.* Collateral attack of a judgment through Rule 60(b) is not a permissible substitute for appealing the judgment. *Bell*, 214 F.3d at 801. "The ground for setting aside a judgment under Rule 60(b) must be something that could not have been used to obtain a reversal by means of a direct appeal." *Id.* As stated above, Rule 60(b) is not a vehicle for addressing simple legal error. *Russell*, 51 F.3d at 749.

Under *Bell*, Judge McGarity should not have considered the merits of Ostenson's arguments regarding the Voluntary Irrevocable Physician's Lien. Instead, she should have determined whether the Rule 60(b) motion presented a ground for relief that could not have been presented by way of an appeal from the final judgment. *See Bell*, 214 F.3d at 801. Moreover, she could have determined whether Ostenson's reason for not filing an answer and for allowing default judgment to be entered against him met the standards of Rule 60(b)(1).

But remand is not necessary. Nothing in the record supports any finding that Ostenson's Rule 60(b)(1) motion presented something that he could not have presented on appeal. Further, Ostenson presents nothing on appeal arguing the sufficiency of his reason for defaulting. In addition, a presumption exists against granting a Rule 60(b) motion.

Perhaps Ostenson had a reason for his default. The summons in the case told him he was required to file an answer within thirty days, but then indicated that a pretrial conference would be held by telephone on December 18, 2003, with the court initiating the call. Ostenson, who was representing himself at that time, may have thought that he would be able to present whatever defenses he had at the pretrial conference – not

9

realizing that because he had not appeared in the case by filing an answer he would not be called by the court on December 18, 2003.

But Ostenson failed to argue any such reasons in his appeal to this court, and those reasons are the only possible bases for Rule 60(b)(1) relief in this case. Further, Ostenson should have presented those reasons on an appeal from the judgment rather than in a Rule 60(b) motion. He cannot now obtain a determination of the merits of his defenses through a Rule 60(b)(1) motion or the appeal therefrom.

For these reasons,

IT IS ORDERED that Ostenson's appeal is dismissed.

Dated at Milwaukee, Wisconsin, this 27th day of February, 2006.

BY THE COURT

s/ C. N. CLEVERT, JR.
C. N. CLEVERT, JR.
U. S. District Judge

10